SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
jbrophy@seyfarth.com
Jessica C. Koenig (SBN 340974)
jkoenig@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendants
OPTUM SERVICES, INC., and CARY FANG,
erroneously named as CARY SANG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE MARTINEZ, an individual, Plaintiff, v. OPTUM SERVICES, INC., a Delaware corporation; CARY SANG, and individual; and DOES 1-100, inclusive, Defendants. | Case No. _____ **DEFENDANTS' NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT** [Los Angeles County Superior Court Case No. 26NNCV02681] Complaint Filed: April 8, 2026 |

325893173v.2

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...................................................................................................1

II.    TIMELINESS OF REMOVAL ...........................................................................2

III.    JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP ...........................3

    A.    Plaintiff Is A Citizen Of California ................................................................3

    B.    Defendant Optum Is A Citizen Of Delaware And Minnesota .......................4

    C.    Defendant Cary Fang's Citizenship Should Be Disregarded Because He Is A Sham Defendant ..........................................................................5

    D.    Defendant Fang Is A Sham Defendant Because There Is No Basis For Any Personal Liability For Plaintiff's Claims Alleged Against Him .............6

    E.    Doe Defendants May Be Disregarded ...........................................................7

IV.    AMOUNT IN CONTROVERSY ..........................................................................8

    A.    The Amount In Controversy Exceeds $75,000 .............................................8

        1.    Failure To Pay Overtime Wages .........................................................11

        2.    Meal Period Premium Pay Damages ...................................................12

        3.    Rest Period Premium Pay Damages ....................................................13

        4.    Waiting Time Penalties .......................................................................14

        5.    Attorneys' Fees ...................................................................................15

V.    VENUE ................................................................................................................15

VI.    NOTICE OF REMOVAL ....................................................................................16

VII.    PRAYER FOR REMOVAL .................................................................................16

i

325893173v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. Mercedes-Benz USA, Inc.,*
243 F. Supp. 2d 1004 (N.D. Cal. 2002) ................................................................. 15

*Caterpillar, Inc. v. Williams,*
482 U.S. 386 (1987) ................................................................................................... 9

*Chavez v. JPMorgan Chase & Co.,*
888 F.3d 413 (9th Cir. 2018) .................................................................................. 15

*City of Clarksdale v. BellSouth Telecomms., Inc.,*
428 F.3d 206 (5th Cir. 2005) .................................................................................... 3

*Coleman v. Estes Express Lines, Inc.,*
730 F. Supp. 2d 1141 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.,* 631 F.3d 1010 (9th Cir. 2011) ............................................... 9

*Davis v. HSBC Bank Nevada, N.A.,*
557 F.3d 1026 (9th Cir. 2009) .................................................................................. 4

*Feao v. UFP Riverside, LLC,*
2017 WL 2836207 (C.D. Cal. June 26, 2017) ...................................................... 10

*Franke v. Anderson Merchandisers LLC,*
2017 WL 3224656 (C.D. Cal. July 28, 2017) ....................................................... 10

*Fristoe v. Reynolds Metals, Co.,*
615 F. 2d 1209 (9th Cir. 1980) ................................................................................. 7

*Fritsch v. Swift Transp. Co. of Arizona, LLC,*
899 F.3d 785 (9th Cir. 2018) .................................................................................. 15

*Galt G/S v. JSS Scandinavia,*
142 F. 3d 1150 (9th Cir. 1998) ........................................................................... 8, 15

*Guglielmino v. McKee Foods Corp.,*
506 F.3d 696 (9th Cir. 2007) ............................................................................... 8, 9

*Harris v. Bankers Life & Cas. Co.,*
425 F.3d 689 (9th Cir. 2005) .................................................................................... 3

*Hunter v. Philip Morris USA,*
582 F.3d 1039 (9th Cir. 2009) .................................................................................. 5

*Jones v. Tween Brands, Inc.,*
2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) ...................................................... 10

*Kanter v. Warner-Lambert Co.,*
265 F.3d 853 (9th Cir. 2001) .................................................................................... 4

ii

*Kantor v. Wellesley Galleries, Ltd.*,
   704 F.2d 1088 (9th Cir. 1983) ....................................................................4

*Kenny v. Wal-Mart Stores, Inc.*,
   881 F.3d 786 (9th Cir. 2018) .....................................................................2

*Korn v. Polo Ralph Lauren Corp.*,
   536 F.Supp.2d 1199 (E.D. Cal. 2008) ......................................................9

*McCabe v. Gen. Foods Corp.*,
   811 F.2d 1336 (9th Cir. 1987) ...................................................................6

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ...................................................................6

*Muniz v. Pilot Travel Ctrs. LLC*,
   2007 WL 1302504 (E.D. Cal. May 1, 2007) ............................................9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ...................................................................................2

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998) ...................................................................6

*Rodriguez v. AT&T Mobility Services LLC*,
728 F.3d 975 (9th Cir. 2013) .......................................................................9

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   720 F.3d 1121 (9th Cir. 2013) ...................................................................3

*Sanchez v. Monumental Life Ins.*,
   102 F.3d 398 (9th Cir. 1996) .....................................................................8

*State Farm Mut. Auto Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) .....................................................................4

*The Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) .....................................................................................4

*Torrez v. Freedom Mortg., Corp.*,
   2017 WL 2713400 (C.D. Cal. June 22, 2017) .........................................10

*Valdez v. Allstate Ins. Co.*,
   372 F.3d 1115 (9th Cir. 2004) ................................................................8, 9

*Wecker v. National Enameling & Stamping Co.*,
   204 U.S. 176 (1907) ...................................................................................5

*Whidbee v. Pierce Cty.*,
   857 F.3d 1019 (9th Cir. 2017) ...................................................................3

**State Cases**

*Lazar v. Hertz Corp.*
   69 Cal. App. 4th 1494 (1999) ....................................................................7

DEFENDANTS' NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT

325893173v.2

*Murphy v. Kenneth Cole Prods., Inc.*,
  40 Cal. 4th 1094 (2007) ...................................................................................................... 12

*White v. Ultramar, Inc.*,
  21 Cal. 4th 562 (1999) ......................................................................................................... 7

**Federal Statutes**

28 U.S.C.
  § 84(c) ................................................................................................................................. 15
  § 84(c)(2) ............................................................................................................................ 16
  § 1332................................................................................................................................ 1, 7
  § 1332(a)(1) .......................................................................................................................... 3
  § 1332(c)(1) ...................................................................................................................... 4, 5
  § 1391(a) ............................................................................................................................. 15
  § 1441............................................................................................................................. 1, 15
  § 1441(a) ...................................................................................................................... 3, 7, 16
  § 1446............................................................................................................................... 1, 2
  § 1446(a) ............................................................................................................................. 16
  § 1446(b) .............................................................................................................................. 3
  § 1446(d) ............................................................................................................................. 16

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................... *passim*

Cal. Bus. & Prof. Code § 17208 ........................................................................... 11, 12, 13

Cal. Civ. Code § 3294 ........................................................................................................ 7

Cal. Civ. Proc. Code § 338(a) ......................................................................................... 11

Cal. Civ. Proc. Code § 340 .............................................................................................. 14

Cal. Civ. Proc. Code § 415.10 ......................................................................................... 3

Cal. Lab. Code
  § 201................................................................................................................................... 14
  § 202................................................................................................................................... 14
  § 203................................................................................................................................... 14
  § 203(a) .............................................................................................................................. 14
  § 226.7................................................................................................................................ 12
  § 226.7(c) ...................................................................................................................... 12, 13
  § 510................................................................................................................................... 11
  § 558.1.................................................................................................................................. 6
  § 558.1(a) ............................................................................................................................. 6
  § 558.1(b) ............................................................................................................................. 6
  § 1194................................................................................................................................. 11

iv

325893173v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF STEPHANIE MARTINEZ, AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Optum Services, Inc., and Cary Fang (erroneously named as "Cary Sang") (collectively, "Defendants") hereby remove the above-referenced action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1441 and 1446, based on diversity of citizenship jurisdiction (28 U.S.C. § 1332). The removal is proper for the following reasons.

**I.    BACKGROUND**

1.      On April 8, 2026, Plaintiff Stephanie Martinez ("Plaintiff") filed a Complaint in the Superior Court of California, Los Angeles County, entitled *Stephanie Martinez, an individual, Plaintiff v. Optum Services, Inc., a Delaware corporation; Cary Sang, an individual; and Does 1-100, inclusive, Defendants;*" Case No. 26NNCV02681 (the "Complaint"). The Complaint asserts seven (7) claims for: (1) "Failure to Pay Overtime Compensation"; (2) "Failure to Pay Minimum Wage"; (3) "Failure to Provide Meal Periods"; (4) "Failure to Provide Rest Breaks"; (5) "Failure to Pay Wages Due Upon Termination; Waiting Time Penalties"; (6) "Failure to Issue Accurate and Itemized Wage Statements"; and (7) "Unlawful Business Practices in Violation of CA B&P Code 17200." A true and correct copy of the Complaint included in the service packet is attached hereto as **Exhibits A-B** to the concurrently filed Declaration of Jessica C. Koenig ("Koenig Decl.").

2.      On April 14, 2026, Defendant Optum Services, Inc.'s ("Optum") registered agent for service of process in California received, via process server, the Summons, the Complaint, the Civil Case Cover Sheet, Notice of Case Management Conference and Notice of Assignment of Judge, Alternative Dispute Resolution Information, and Notice of Deposit of Advance Jury Fee. (Koenig Decl., ¶ 5 Ex. C.)

///

325893173v.2

3.      On April 26, 2026, Defendant Cary Fang ("Fang")  received via process server, the Summons, the Complaint, the Civil Case Cover Sheet, Notice of Case Management Conference and Notice of Assignment of Judge, Alternative Dispute Resolution Information, and Notice of Deposit of Advance Jury Fee.  (Koenig Decl., ¶ 5, D.)

4.      On May 14, 2026, Defendants filed their Answer to the Complaint in Los Angeles County Superior Court.  A true and correct copy of the Answer filed is attached here to as **Exhibit E** to the concurrently filed Declaration of Jessica C. Koenig.

5.      Defendants have not filed or received any other pleadings or papers in this action prior to this Notice of Removal, other than the pleadings described above. (Koenig Decl., ¶ 7.)

6.      As discussed in greater detail below, Optum is a citizen of Delaware and Minnesota.

7.      Defendants' removal of this action should not be construed as a waiver of their right to seek to compel arbitration and to stay or dismiss the claims against them based on the arbitration agreement that Plaintiff signed.  Defendants intend to exercise their right to move this action to arbitration with Plaintiff's consent or by an order of the Court.

## II.      TIMELINESS OF REMOVAL

8.      The time for filing a Notice of Removal does not begin to run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable."  *See* 28 U.S.C. §1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"); *accord Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("We have also emphasized that

325893173v.2

'a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability.'"); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005)).  Accordingly, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document.").  *Id*.

9.     The service of process, which triggers the 30-day period to remove, is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law.");*City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

10.     This Notice of Removal is timely because it is filed within thirty (30) days of personal service of the Summons and Complaint on Optum on April 14, 2026.  *See* 28 U.S.C. §1446(b); Cal. Civ. Proc. Code §415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery.").

## III.    JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

11.     The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1).  As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. § 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

### A.    Plaintiff Is A Citizen Of California

12.     Plaintiff is and, at all times since the commencement of this action, has been a resident and citizen of the State of California.  The Complaint alleges that Plaintiff "was a resident of the State of California at all relevant times."  (Ex. A, Complaint, ¶ 1.)

3

325893173v.2

13. Additionally, on Plaintiff's 2024 Federal form W-2, her address is listed as in Pasadena, California. (*See* Declaration of Susan Weedman ("Weedman Decl.") ¶ 4.)

14. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

15. Therefore, Plaintiff is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

**B.     Defendant Optum Is A Citizen Of Delaware And Minnesota**

16. Optum is now, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. § 1332(c)(1). For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. 1332(c)(1)).

17. The United States Supreme Court in *The Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010), held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center"** ....

*Id*. at 92-93 (emphasis added).

18. Optum is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware. (Declaration of Kelly O'Rourke ("O'Rourke Decl."), ¶ 5.)

/ / /

4

325893173v.2

19. Under the "nerve center" test, Optum's principal place of business is, and has been at all times since this action commenced, located in the State of Minnesota. (O'Rourke Decl., ¶ 5.)

20. Optum's principal place of business is Minnesota because its "nerve center" is located in that state. Optum's corporate headquarters is located in Eden Prairie, Minnesota, from which its high level officers direct, control, and coordinate its activities. (O'Rourke Decl., ¶ 5.) Optum's high level corporate officers maintain offices in Eden Prairie, Minnesota, and many of its corporate level functions are performed in the Eden Prairie, Minnesota offices. (*Id*.) Additionally, many of Optum's executive and administrative functions, including corporate finance and accounting, are directed from the Eden Prairie, Minnesota offices. (*Id*.) Therefore, for purposes of diversity of citizenship, Optum is, and has been at all times since this action commenced, a citizen of the State of Minnesota. 28 U.S.C. § 1332(c)(1).

**C. Defendant Cary Fang's Citizenship Should Be Disregarded Because He Is A Sham Defendant**

21. "[T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right." *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

22. The individual defendant (and the only non-diverse defendant), Fang, Plaintiff's alleged former supervisor, is not a proper party to this lawsuit. Accordingly, his citizenship should be disregarded for purposes of this removal because, as discussed more fully below, he was fraudulently joined to defeat diversity jurisdiction.

23. A non-diverse defendant who has been fraudulently joined may be disregarded for diversity jurisdiction purposes. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Fraudulent joinder exists, and the non-diverse defendant is ignored for purposes of determining diversity of the parties, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the

///

5

settled rules of the state." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *accord Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

24.     When determining whether this burden has been met, courts may look to the face of the plaintiff's complaint as well as to additional "summary judgment type evidence." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001). District courts may consider "the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339; *see also Ritchey*, 139 F.3d at 1318 (explaining that where fraudulent joinder is at issue, a district court may look beyond the pleadings because "a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory").

**D.     Defendant Fang Is A Sham Defendant Because There Is No Basis For Any Personal Liability For Plaintiff's Claims Alleged Against Him**

25.     Plaintiff asserts the following seven (7) causes of action against Defendant Fang: (1) "Failure to Pay Overtime Compensation"; (2) "Failure to Pay Minimum Wage"; (3) "Failure to Provide Meal Periods"; (4) "Failure to Provide Rest Breaks"; (5) "Failure to Pay Wages Due Upon Termination; Waiting Time Penalties"; (6) "Failure to Issue Accurate and Itemized Wage Statements"; and (7) "Unlawful Business Practices in Violation of CA B&P Code 17200."

26.     Defendant Fang cannot be held individually liable for any of the labor violation claims brought against him as a matter of law.  Individual liability is governed by California Labor Code section 558.1, which provides that any "person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum wages or hours and days of work … maybe held liable as the employer for such violation."  Cal. Lab. Code § 558.1(a).

27.     Labor Code section 558.1 goes on to state: "For purposes of this section, the term 'other person acting on behalf of an employer' is limited to a natural person who is an **owner, director, officer, or managing agent of the employer**…."  Cal. Lab. Code

///

6

DEFENDANTS' NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT

325893173v.2

§ 558.1(b) (emphasis added).  The term "managing agent" is defined in the same way as for punitive damages under Section 3294 of the Civil Code. *Id.*

28.    Here, Plaintiff's Complaint does not include a single allegation that would establish that Fang is an "owner, director, officer, or managing agent" of Optum's, other than the conclusory statements that Fang was a "director, officer, or managing agent of Defendant Optum SERVICES []."  (Ex. A, Complaint, ¶ 3.)  The California Supreme Court explained in *White v. Ultramar, Inc.*, 21 Cal. 4th 562 (1999), that managing agents are employees who "exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy."  The Court further explained that a "plaintiff ... would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business."  *Id*. at 577.  Here, during Plaintiff's employment, Fang was employed by Optum as a Pharmacist Manager, Prior Authorization Appeals.  (Weedman Decl., ¶ 6.)  As a Pharmacist Manager, Fang had no authority to set corporate policy.  (*Id*., ¶ 7.)  Rather, all corporate policy is determined at Optum's Headquarters in Eden Prairie, Minnesota.  Pharmacist supervisors and/or managers have no influence or involvement in setting corporate policy at any level.  (*Id*.)  Their role is to implement the policies promulgated at the Headquarters.  (*Id*.)  This failure alone is enough to establish Fang is included only as a sham defendant, and must be disregarded for diversity purposes.

29.    Furthermore, Plaintiff's seventh cause of action for Unfair Business Practices against Fang is barred because it is derivative of and depends solely on the viability of Plaintiff's Labor Code claims.  *See Lazar v. Hertz Corp*. 69 Cal. App. 4th 1494, 1505 (1999) (sustaining demurrer to 17200 claim when alleged violations of other statutes underlying 17200 claim fail as a matter of law).

### E.    Doe Defendants May Be Disregarded

30.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals, Co.*, 615 F. 2d 1209, 1213 (9th Cir. 1980)

7

(unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants, 1 through 50 does not deprive this Court of jurisdiction.

## IV.    AMOUNT IN CONTROVERSY

31.    Although Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-404 (9th Cir. 1996) ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount." (internal citation omitted)). As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).

32.    In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees." (citations omitted)).

33.    Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, further establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

### A.    The Amount In Controversy Exceeds $75,000

34.    The amount in controversy requirement is satisfied because "it is more likely than not" that it exceeds the jurisdictional minimum based on the allegations in Plaintiff's Complaint. *See Sanchez*, 102 F.3d at 404 ("the defendant must provide evidence

/ / /

8

325893173v.2

establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount") (internal citation omitted).

35. The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

36. For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties). As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez v. AT&T Mobility Services LLC,* 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold). If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise. *Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have

9

325893173v.2

assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

37.    Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

38.    Plaintiff seeks to recover wages and compensation unlawfully withheld, restitutionary disgorgement of ill-gotten gains for restitution of the sums incidental to Defendants' unlawful business practices premised on Defendants' alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to provide meal and rest break premium pay, failure to pay the regular rate for overtime and premium pay failure to provide accurate and complete itemized wage statements, failure to pay all wages timely, and failure to pay all wages upon termination. (Koenig Decl., Ex. A, Complaint ¶¶ 18-67, Prayer for Relief.) Plaintiff also seeks attorneys' fees and costs. (*Id.*, at Prayer for Relief.)

325893173v.2

### 1. Failure To Pay Overtime Wages

39. Plaintiff's first cause of action for relief seeks recovery for the nonpayment of wages for all hours worked, penalties, plus reasonable attorneys' fees. (Ex. A, Complaint, ¶¶ 18-27.)

40. Specifically, Plaintiff alleges "Defendants failed to compensate Plaintiff for all overtime hours worked in excess of eight (8) hours per day and forty (40) hours per week and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek. Moreover, Defendants failed to compensate Plaintiff for double-time hours worked in excess of twelve (12) hours per day, and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek as required . . . ." (Ex. A, Complaint, ¶ 23.)

41. The statute of limitations for recovery of unpaid overtime wages under California Labor Code sections 510 and 1194 pay is three years. *See* Cal. Civ. Proc. Code § 338(a). However, Plaintiff alleges that the purported overtime violations constitute unlawful business practices in violation of California Business & Professions Code section 17200. (Ex. A, Complaint, ¶ 66.) Thus, for determining the amount in controversy, the four-year statute of limitations for a claim under the UCL applies. Cal. Bus. & Prof. Code § 17208.

42. Plaintiff, however, worked at Optum from April 29, 2024 through October 11, 2024. (Weedman Decl., ¶ 3.) Because Plaintiff's entire employment period falls within the applicable four-year statute of limitations period, the entirety of Plaintiff's employment is considered for purposes of determining the amount in controversy.

43. During Plaintiff's employment, she allegedly worked approximately 23 weeks. Plaintiff alleges that she performed one additional hour of work per shift. (Ex. A, Complaint, ¶ 24.) Plaintiff's hourly rate of pay was $63.00 per hour. (Weedman Decl., ¶ 5.) Applying a conservative estimate of five hours of unpaid overtime wages per week (one hour extra per shift, assuming 5 shifts a week), at an overtime rate of $94.50 ($63.00

///

11

325893173v.2

X one and one half) , Plaintiff's alleged unpaid overtime wages total approximately **$10,867.50** (5 overtime hours per week X 23 weeks X $94.50).

### 2.     Meal Period Premium Pay Damages

44.     Plaintiff's third cause of action for relief seeks penalties for unpaid meal periods.  (Ex. A, Complaint, ¶¶ 36-40.)

45.     If an employer fails to provide an employee with a 30-minute meal period, the employee is entitled to premium pay equal to one hour of pay at the employee's regular rate of compensation.  Cal. Lab. Code § 226.7(c).

46.     Plaintiff fails to allege the specific number of meal periods missed. However, the Complaint alleges that "Plaintiff was not allowed to take meal breaks during her shifts.  Even if Defendants nominally permitted Plaintiff to take meal breaks, Plaintiff was unable to avail herself of such breaks for various reasons, including but not limited to, the fact that Plaintiff's meal periods were interrupted and cut short, and Plaintiff's work was too voluminous and time-consuming to complete in the number of scheduled hours."  (Ex. A, Complaint, ¶ 39.)  Given the scope of these allegations, a reasonable estimate would be that Plaintiff missed at least five meal periods per week.

47.     The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges that by not receiving the requisite meal or rest periods, Optum violated California Business & Professions Code section 17200. (Ex. A, Complaint, ¶ 66.)  Thus, for determining the amount in controversy, the four-year statute of limitations for a claim under the UCL applies.  Cal. Bus. & Prof. Code § 17208.

48.     Plaintiff worked at Optum until October 11, 2024.  (Weedman Decl., ¶ 4.) Applying a four-year statute of limitations based on the filing date of the Complaint on April 8, 2026, Plaintiff was allegedly denied meal periods for 23 weeks (April 29, 2024 to October 11, 2024).

12

---

49.    Assuming five missed meal periods per week, for 23 weeks at a rate of $63.00 per hour, Plaintiff would have a total alleged underpayment of **$7,245** (5 hours per week X $63 per hour X 23 weeks).

### 3.    Rest Period Premium Pay Damages

50.    Plaintiff's fourth cause of action for relief seeks penalties for unpaid rest periods.  (Ex. A, Complaint, ¶¶ 41-46.)

51.    If an employer fails to provide an employee with a 10-minute rest period, the employee is entitled to premium pay equal to one hour of pay at the employee's regular rate of compensation.  Cal. Lab. Code § 226.7(c).

52.    Plaintiff fails to allege the specific number of rest periods missed.  However, the Complaint alleges that "Plaintiff was prevented from taking statutorily mandated rest breaks during Plaintiff's shifts.  Plaintiff was unable to avail herself of such breaks for various reasons, including but not limited to, the pressures from Plaintiff's workload and from management to take shorter breaks than she was entitled to, or none at all;" "Defendants failed to provide Plaintiff with the necessary coverage to take all mandated rest breaks.  Defendants further failed to compensate Plaintiff for the missed rest breaks at her regular rate of pay."  (Ex. A, Complaint, ¶¶ 44-45.)  Given the scope of these allegations, a reasonable estimate would be that Plaintiff missed five rest periods per week.

53.    Plaintiff alleges that by not providing meal and rest breaks, Optum violated California Business & Professions Code section 17200.  (Ex. A, Complaint, ¶ 66.)  Thus, for determining the amount in controversy, the four-year statute of limitations for a claim under the UCL applies.  Cal. Bus. & Prof. Code § 17208.

54.    Plaintiff worked from until October 11, 2024.  (Weedman Decl., ¶ 4.) Applying a four-year statute of limitations based on the filing date of the Complaint on April 8, 2026, Plaintiff was allegedly denied meal periods for 23 weeks.

/ / /

/ / /

13

325893173v.2

55. Assuming five missed rest periods per week, for 23 weeks at a rate of $63 per hour, Plaintiff would have a total alleged underpayment of **$7,245** (5 hours per week X $63 per hour X 23 weeks).

### 4. Waiting Time Penalties

56. Plaintiff's fifth cause of action seeks penalties for wages not timely paid upon termination. (Ex. A, Complaint, ¶¶ 47-55.)

57. California Labor Code section 203 provides for penalties of daily wages up to 30 days, if an employer fails to pay all wages due at the time of termination. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

58. Plaintiff fails to allege the amount of waiting time penalties owed to her. However, Plaintiff alleges that "Defendants willfully failed to pay Plaintiff all wages due to her at the time of her separate as required by California Labor Code §§ 201 and 202," and "Defendants' failure to pay all wages owed was willful and intentional and Plaintiff is thus entitled to penalties under Labor Code § 203." (Ex. A, Complaint, ¶¶ 50, 54.) Thus, based on a conservative calculation of Plaintiff working an average of 8 hours per day during the last year of her employment, Plaintiff's waiting time penalties for 30 days would amount to **$15,120** (8 hours per day x $63 per hour x 30 days). (Weedman Decl., ¶ 5.)

59. Without factoring in Plaintiff's claims attorneys' fees, discussed below, Plaintiff's lost wages and penalties equal **$40,477.50**[1].

/ / /

/ / /

---

[1] This estimate of damages does not include Plaintiff's sixth cause of action seeking penalties for inaccurate wage statements, which is time-barred under California Code of Civil Procedure § 340, nor Plaintiff's second cause of action for Failure to Pay Minimum Wages.

14

### 5.    Attorneys' Fees

60.    Plaintiff also seeks attorneys' fees.  (Ex. A, Complaint, ¶¶ 26, 34, 40, 46, 55, 62, Prayer for Relief, 7.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is "mandatory or discretionary"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–1011 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

61.    The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

62.    Defendants anticipate that the Parties will propound written discovery, that multiple depositions will be taken in this case, and that Defendants will file a Motion for Summary Judgment.  (Koenig Decl., ¶ 9.)  Here, if Plaintiff prevails, she could be entitled to an award of attorney's fees that alone are "more likely than not" to exceed $75,000, as is typical in wage and hour cases.

## V.    VENUE

63.    Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in the Superior Court of the State of California for the County of Los Angeles,

15

325893173v.2

which is located within the Central District of California. *See* 28 U.S.C. § 84(c)(2) ("The Central District…. Western Division comprises the counties of Los Angeles, San Luis Obispo, Santa Barbara, and Ventura."). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI.   NOTICE OF REMOVAL

64.   Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of the filing of this Notice of Removal to Plaintiff, and file the written notice and a copy of the Notice of Removal with the Clerk of the Superior Court of the State of California, Los Angeles County, in the State Court Action.

65.   This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

66.   In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as Exhibits A through E to this Notice of Removal.

## VII.   PRAYER FOR REMOVAL

67.   WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, Los Angeles County, to the United States District Court for the Central District of California.

DATED: May 14, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: _____
Jonathan L. Brophy
Jessica C. Koenig
Attorneys for Defendants
OPTUM SERVICES, INC., and CARY
FANG, erroneously named as CARY
SANG

16

325893173v.2